UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

BOUALEM HABIB,

    Plaintiff,

  v.

MATSON NAVIGATION COMPANY,

INC.,

    Defendant.

Case No. C12-1906RSM

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT
AND GRANTING IN PART
DEFENDANT'S MOTION FOR
SANCTIONS

## I.  INTRODUCTION

This matter comes before the Court on Defendant's Motion for Summary Judgment (Dkt. #30) and related Motion for Sanctions (Dkt. #37). For the reasons set forth below, the Court GRANTS Defendants' motion for summary judgment and GRANTS IN PART its motion for sanctions.

## II.  BACKGROUND[1]

The instant lawsuit arises out of a series of events that occurred in August of 2011. Plaintiff, Boualem Habib, states that he was born in Algeria, is of Arab descent, and is a

---

[1] This background is based on all evidence submitted to the Court, which views the facts in the light most favorable to the Plaintiff as the non-moving party. However, the Court also notes that Plaintiff has either agreed or failed to address or respond to many of the relevant facts set forth by Defendant in support of its motion, particularly those describing the operating procedures related to its ships; therefore, the Court accepts those facts as undisputed.

ORDER
PAGE - 1

Muslim. Dkt. #1 at ¶ 2.1. On March 5, 2011, Plaintiff accepted employment with Defendant, Matson Navigations Company, Inc., to become the Chief Cook on the SS MAUI. Dkt. #1 at ¶ 2.3 and Dkt. #35-1 at 4. Defendant operates container vessels delivering goods across the globe, including between the West Coast of the United States and Hawaii. The MAUI is a container ship in Defendant's fleet.

Plaintiff's position as Chief Cook was considered to be a "rotary" position, meaning that the individual is assigned to the job for a certain amount of time, completing various rotations on and off the vessel. Dkt. #35-1 at 2-3. Plaintiff was hired to work for 22 months. Dkt. #1 at ¶ 2.3.

The parties agree that Plaintiff sailed aboard the MAUI from March 2011 through June 25, 2011, at which time he departed the vessel to take a "trip off" as vacation time, as allowed by the governing Collective Bargaining Agreement ("CBA").[2] Dkt. #1 at ¶ 2.3 and Dkt. #35-1 at 5. During "trips off," rotary position crewmembers are not considered to be members of the ship's crew. Further, during that time, they are not Matson employees because they have signed off on their "shipping articles," which are the specific contracts between the Captain and the crewmembers for their specific voyages. Dkt. #35-1.

On August 6, 2011, while the SS MAUI was at port in Seattle, and while Plaintiff was still on vacation, Plaintiff re-boarded the ship twice. Dkt. #1 at ¶ 2.4. First, Plaintiff boarded the ship at approximately 3:00 a.m. to pick up a shipmate whose father had suddenly passed away and take him to the airport. Later that day, Plaintiff boarded the ship a second time to retrieve fishing gear that he had left on the ship. *Id.* Plaintiff alleges that the only person he interacted with on the ship was his shipmate's replacement, and that was during the second time he boarded the ship. *Id.*

---

[2] Plaintiff is a member of the Seafarer's International Union ("SIU"). Dkt. #1 at ¶ 2.7 and Dkt. #35-1 at 4.

At the time of the events giving rise to the Complaint in this matter, the MAUI had berthed at Terminal 18 in Seattle.  Dkt. #35-1 at 3.  Terminal 18 is managed by SSA Marine. *Id.*  American Corporate Security handles all security at Terminal 18.  *Id.*  Individuals gain access to the Terminal by possessing a valid Transportation Worker Identification Credential ("TWIC card") or are otherwise cleared by security.  *Id.*  However, the TWIC card does not guarantee access to a particular vessel.  To gain access to the MAUI, an individual is required to be on the vessel's current Crew List, or on its approved Visitor List, or have express permission from the vessel's master.  Dkt. #35-1 at 4.  Nobody disputes that Plaintiff had a valid TWIC card at that time, and that he gained access to the terminal using that card.

On the afternoon of August 6, 2011, Captain James Brady, who was serving as the MAUI's master, received a report that Plaintiff had boarded the ship without permission, and that he had an altercation with then-Chief Cook Tammy Bingisser.  Dkt. #35-1 at 5.  Captain Brady verbally informed Defendant's shoreside personnel of the report that same day.  *Id.* The report described an altercation wherein Plaintiff had allegedly verbally assaulted Ms. Bingisser while aboard the ship, including yelling at her, kicking or shoving her stateroom door, and calling her a "fucking bitch."  *Id.*  Captain Brady submitted a written report documenting the same the next day.  Included in that written report were acknowledgments of certain security failures that had resulted in Plaintiff's access to the ship, even though he was not a current crew member and not on the Visitor's list.  Dkt, #35-1 at 6.

While Plaintiff vehemently denies the alleged interaction with Ms. Bingisser, he does not deny that:

1. He had signed off his contract of employment and his shipping articles on June 25, 2011, when he left for vacation;

2. He was not on the MAUI's Visitor List or Crew List when he boarded the ship on August 6, 2011;

3. He did not board the MAUI on August 6, 2011, for any business purpose;

4. He did not have express permission from the ship's master to board the ship on August 6, 2011; and

5. The TWIC card does not permit boarding specific vessels.

*See* Dkt. #43 at 3-14.

On August 17, 2011, after completing its own investigation, Defendant terminated Plaintiff's employment.  Dkt. #33 at 37.  Defendant determined that Plaintiff's actions onboard the vessel had resulted in several violations of the governing CBA.  *Id.*  Again, while Plaintiff denies the alleged actions onboard the MAUI on August 6, 2011, he does not deny that this was the stated reason for his termination.  *See* Dkt. #1 at ¶ 2.6.

After receiving the August 17th letter, Plaintiff filed a grievance with the SIU.  Dkt. #1 at ¶ 2.7.  The union conducted its own investigation and concluded that Plaintiff's presence on the MAUI was a violation of policy and maritime security protocols.  *Id.*

Plaintiff alleges that on or about October 7, 2011, he received a visit from two federal Air Marshalls, who questioned him "extensively" regarding his behavior on the MAUI and about his race, religion and national origin, which led him to believe that concerns about his race, national origin and religion were central to the "interrogation."  Dkt. #1 at ¶ 2.8.  As a result, Plaintiff now asserts that his termination was discriminatory, bringing claims against

ORDER
PAGE - 4

Defendant under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a) and the Civil Rights Act of 1991.[3]

Plaintiff has also asserted a breach of contract claim against Defendant, which he now intends to withdraw. *See* Dkt. #1 and Dkt. #39

## III.   DISCUSSION

### A.  Summary Judgment Standard

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).   In ruling on summary judgment, a court does not weigh evidence to determine the truth of the matter, but "only determine[s] whether there is a genuine issue for trial." *Crane v. Conoco, Inc.*, 41 F.3d 547, 549 (9th Cir. 1994) (*citing Federal Deposit Ins. Corp. v. O'Melveny & Meyers*, 969 F.2d 744, 747 (9th Cir. 1992)).  Material facts are those which might affect the outcome of the suit under governing law. *Anderson,* 477 U.S. at 248.

The Court must draw all reasonable inferences in favor of the non-moving party. *See O'Melveny & Meyers*, 969 F.2d at 747, *rev'd on other grounds*, 512 U.S. 79 (1994).  However, the nonmoving party must make a "sufficient showing on an essential element of her case with respect to which she has the burden of proof" to survive summary judgment. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).  Further, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 251.

---

[3] While Plaintiff initially raised religion-based claims in his Complaint, he does not discuss any bases of religious discrimination in his Response to the Motion for Summary Judgment and appears to have abandoned that claim.  *See* Dkts. #1 and #43.

ORDER
PAGE - 5

**B.  Title VII Discrimination**

Plaintiff alleges that he was wrongfully terminated based on the fact that he is Algerian and a Muslim, and asserts that he was treated "like no other Matson employee has ever been treated." Dkt. #43.  In order to succeed on this claim, Plaintiff must prove that his termination was "because of" unlawful discrimination.  *Costa v. Desert Palace, Inc.*, 299 F.3d 838, 857 (9th Cir. 2002).  Title VII disparate-treatment claims like Plaintiff's "require the plaintiff to prove that the employer acted with conscious intent to discriminate."  *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 805-06, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973).  Plaintiff must show that (1) he belongs to a protected class, (2) he performed according to his employer's legitimate expectations, (3) he was subjected to an adverse employment action, and (4) similarly situated individuals outside his protected class were treated more favorably.  *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1220 (9th Cir. 1998) (internal citations omitted).  However, the Ninth Circuit "has explained that under the *McDonnell Douglas* framework, 'the requisite degree of proof necessary to establish a *prima facie* case for Title VII . . . on summary judgment is minimal and does not even need to rise to the level of a preponderance of the evidence.'"  *Id.* (quoting *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994)).

Courts employ a burden-shifting analysis for Title VII claims:

> [T]he plaintiff must establish a prima facie case of discrimination.  If the plaintiff succeeds in doing so, then the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its allegedly discriminatory conduct.  If the defendant provides such a reason, the burden shifts back to the plaintiff to show that the employer's reason is a pretext for discrimination.

*Vasquez v. Cnty. of L.A.*, 349 F.3d 634, 640 (9th Cir. 2004) (quoting *McDonnell Douglas*, 411 U.S. at 802-05).  At the summary judgment stage, the plaintiff does not have to prove that the employer's reason for firing him was pretext for discrimination, but the plaintiff must introduce

evidence sufficient to raise a genuine issue of material fact as to whether the employer's reason was pretextual.  *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1282 (9th Cir. 2000).  Plaintiff cannot do so in this case.

As an initial matter, Plaintiff fails to make a *prima facie* case of discrimination.  While Defendant does not appear to dispute that Plaintiff could satisfy the first three elements of a *prima facie* case of discrimination, Defendant does argue that Plaintiff has failed to present evidence that any similarly-situated individual outside of the protected class was treated more favorably than Plaintiff was.  *See* Dkt. #35-1 at 14-15.  The Court agrees.  Indeed, it appears that Plaintiff relies solely on his own speculation to support that element of his claim.  For example, Plaintiff describes one situation where Captain Brady allegedly refused to shake his hand, apparently in an effort to demonstrate that Captain Brady did not like him because of his race and national origin.  Dkt. #43 at 9.  However, there is nothing in the record to support that assertion, and the apparent citation to a supporting deposition excerpt is not in the record before this Court.[4]

Likewise, Plaintiff argues that no other employee has ever been terminated for unauthorized boarding of a ship, *see* Dkt. #43 at 17-26, yet fails to cite to a single portion of the record in support of his argument, and fails to produce any evidence that an employee in a similar situation who is not a member of a protected class was treated more favorably than he was.  *Id.*  In fact, Plaintiff has not submitted a single comparator to this Court for review.  *Id.* Self-serving conclusions that "Captain Brady rushed to judgment based on Habib's name and

---

[4] In fact, Plaintiff has failed to provide correct citations to the record before this Court to support any portion of his legal argument, and a majority of the page citations provided by Plaintiff in his fact section fail to match any of the exhibits submitted on the record.  Accordingly, Plaintiff cannot meet his burden on this motion.  "A district court has no independent duty to scour the record in search of a genuine issue of triable fact, and may rely on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment." *Simmons v. Navajo County, Ariz.*, 609 F.3d 1011, 1017 (9th Cir. 2010)(*internal citations omitted*). District courts are under no obligation to undertake a cumbersome review of the record on the nonmoving party's behalf. *Id.*

ORDER
PAGE - 7

the fact that he was reported aboard the Maui with a blue backpack," Dkt. #43 at 18, simply cannot support a *prima facie* case of discrimination in these circumstances.  *Forsberg v. Pac. Northwest Bell Tel. Co.*, 840 F.2d 1409, 1419 (9th Cir. 1988).

But even assuming that Plaintiff had made a minimal showing of a *prima facie* case, his race discrimination claim may be dismissed upon review of the other two *McDonnell Douglas* steps.  *See Adams v. Pierce County*, 2014 U.S. Dist. LEXIS 37676, *19 (W.D. Wash. Mar. 20, 2014).  In the second step of the *McDonnell Douglas* test, the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the adverse employment action. Defendant has done so in this case.

Defendant terminated Plaintiff because it learned that he had boarded the MAUI without authorization, and because it concluded after its own investigation that Plaintiff had verbally assaulted a crew member.  Dkt. #33 at 37.  Plaintiff has admitted that on August 6, 2011, he was not on the MAUI's visitor list, he was not working that day, and he had no job-related purpose for being on the vessel.  Dkt. #31-6 at 54:11-19.  Further, while Plaintiff disputes that the alleged verbal assault actually occurred, he does not dispute that Defendant received a complaint from Captain Brady stating that Plaintiff had verbally assaulted Tammy Bingisser, that both Defendant and the SIU investigated the complaint, and that the Defendant based its termination in part on its conclusion that the complaint was credible.  *See* Dkt. #1. These are legitimate business reasons for his termination.

Finally, Plaintiff has failed to present any evidence to the Court to rebut these legitimate business reasons for his termination.  Plaintiff speculates at length that both Defendant's and his union's investigations into the alleged verbal assault were motivated by animus toward his name and national origin.  *See* Dkt. #43.  Yet there is nothing in the record from which the

ORDER
PAGE - 8

Court could draw such a conclusion, either direct or circumstantial.  Moreover, "[i]n judging whether [Defendant's] proffered justifications were 'false,' it is not important whether they were *objectively* false [].  Rather, courts 'only require that an employer honestly believed its reason for its actions, even if its reason is 'foolish or trivial or even baseless.'" *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1063 (9th Cir. 2002) (citation omitted) (emphasis in original).  Here, Plaintiff has presented no evidence that Defendant did not honestly believe its proffered reasons for Plaintiff's termination.  For all of these reasons, Plaintiff's discrimination claim is dismissed.

### C.  Breach of Contract

Defendant also moves to dismiss Plaintiff's breach of contract claim on the basis that it is time-barred by the statute of limitations under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185(a).  Dkt. #35-1 at 13-14.  Plaintiff has failed to respond to Defendant's arguments or discuss the claim at all in his Response to the motion for summary judgment.  *See* Dkt. #43.  For this reason alone, the Court may dismiss the claim.  *See* Local Rule CR 7(b)(2).  Moreover, Plaintiff has asserted in response to Defendant's related motion for sanctions that he "will be moving to voluntarily dismiss the breach of contract claim," Dkt. #39 at 1, which indicates to the court that he believes Defendant's motion has merit.[5]  Accordingly, the Court hereby dismisses Plaintiff's breach of contract claim as time-barred.

### D.  Rule 11 Sanctions

Finally, Defendant has moved the Court for an award of sanctions, arguing that Plaintiff's counsel should personally be liable for attorney's fees under Rule 11.  Rule 11 generally provides guidelines for attorneys to follow when submitting a pleading to the court.  The rule "imposes a duty on attorneys to certify that they have conducted a reasonable inquiry

---

[5] The Court notes that Plaintiff has not moved to dismiss the claim to date.

ORDER
PAGE - 9

and have determined that any papers filed with the court are well grounded in fact, legally tenable, and not interposed for any improper purpose." *Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 393, 110 S. Ct. 2447, 110 L. Ed. 2d 359 (1990). "The central purpose of Rule 11 is to deter baseless filing in district court[.]" *Id.* (internal quotations omitted). Additionally, "[s]anctions must be imposed on the signer of a paper if the paper is 'frivolous.'" *In re Keegan Mgmt. Co.,* 78 F.3d 431, 434 (9th Cir. 1996). Although the word "frivolous" does not appear in the text of the rule, it is well-established that it denotes "a filing that is *both* baseless *and* made without a reasonable and competent inquiry." *Id.* (citation omitted) (emphasis in original). However, "Rule 11 is an extraordinary remedy, one to be exercised with extreme caution." *Operating Engineers Pension Trust v. A-C Co.,* 859 F.2d 1336, 1345 (9th Cir. 1988).

In the instant case, the Court finds that that this case is not frivolous in its entirety. While the Court has ultimately determined that Plaintiff falls short of establishing a cognizable discrimination claim, it is clear from the pleadings that Plaintiff has made a genuine attempt to demonstrate a *prima facie* claim. The fact that legal minds differ in what constitutes sufficient evidence is not enough for this Court to order sanctions even though the claim has ultimately failed.

However, with respect to Plaintiff's breach of contract claim, the Court finds sanctions are warranted. Plaintiff was put on notice of the deficiency of the claim prior to Defendant's motions in this matter, and apparently agrees that it is deficient. *See* Dkt. #37 at 2 and Dkt. #39. Yet, even as of this date, Plaintiff has failed to actually withdraw the claim. This dilatory action has caused Defendant to spend its resources to continue to defend an otherwise baseless claim. Plaintiff's sole defense is that he "was advised by a former counsel on this matter and there was no discussion between counsel regarding the efficacy of § 301 of the Labor

ORDER
PAGE - 10

Management Relations Act or whether the statue of limitations therein are applicable with respect to Mr. Habib." Dkt. #39 at 6. He does not explain why he did not reevaluate the claim on his own after defense counsel alerted him to the statute of limitations issue.

Once current counsel entered his notice of appearance in this matter, he subjected himself to the Rules and standards of this Court. At that point, Plaintiff's counsel had an affirmative duty to evaluate the claims being made and a continuing duty to dismiss any claims that were no longer viable. *See Hess v. Reg-Ellen Mach. Tool Corp.*, 367 Fed. Appx. 687, 691 (7th Cir. 2010); *Au v. Yulin Ma*, 2008 U.S. Dist LEXIS 23787 at *14 (S.D. Ga. Mar. 26, 2008) ("Any attorney who fails to act in this regard, 'and multiplies the proceedings in any case unreasonably and vexatiously,' is subject to liability for potentially violating 28 U.S.C. § 1927 and Federal Rule 11. (internal citation omitted)); *Van Berkel v. Fox Farm & Road Machinery*, 581 F. Supp. 1248, 1251 (D. Minn. 1984) (imposing Rule 11 sanctions and holding that an attorney has the duty to dismiss a suit, even over the objection of the client, "and to do it promptly when he learned that his client had no case"). As the Middle District of North Carolina has explained:

> [t]he lawyer's duty to place his client's interests ahead of all others presupposes that the lawyer will live with the rules that govern the system. Attorneys are officers of the Court and their first duty is to the administration of justice. An attorney has a professional duty to dismiss a baseless motion or lawsuit, even over client's objection, and to do so promptly on learning that the client's position is without merit.

*Coburn Optical Industries, Inc. v. Cilco, Inc.*, 610 F. Supp. 656, 661 (M.D.N.C. 1985). Because he appears to concede that the breach of contract claim is barred, and because he appears to have made no effort to dismiss the claim, the Court finds sanctions appropriate. However, because the Court does not find Plaintiff's entire Complaint to be frivolous, the Court

ORDER
PAGE - 11

will impose sanctions in a flat amount of $1500, which the Court believes is sufficient to deter repetition of such conduct in the future.  Fed. R. Civ. Pro. 11(c)(4).

## IV.   CONCLUSION

Having reviewed the Defendant's motions, the responses in opposition thereto and replies in support thereof, along with the remainder of the record, the Court hereby finds and ORDERS:

(1)  Defendant's Motion for Summary Judgment (Dkt. #30) is GRANTED.

(2)  Defendant's Motion for Sanctions (Dkt. #37) is GRANTED IN PART.  Plaintiff's counsel is directed to pay directly to defense counsel $1,500.00 no later than thirty (30) days from the date of this order, as partial compensation for its fees and other costs directly resulting from his failure to analyze and dismiss Plaintiff's time-barred breach of contract claim.

(3)  Plaintiff's claims are DISMISSED in their entirety and the case is now CLOSED.


DATED this 26 day of August 2014.


RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE